**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 26, 2022**

# In the Court of Appeals of Georgia

A22A0743. KNAACK v. HENLEY PARK HOMEOWNERS ASSOCIATION, INC.

PHIPPS, Senior Appellate Judge.

In this civil action challenging the validity of home leasing limitations enacted by defendant Henley Park Homeowners Association, Inc. (the "Association" or "HOA"), plaintiff Jennifer Knaack, a former Association member, appeals from the trial court's order granting summary judgment to the Association. Knaack contends on appeal that disputed questions of fact remain with respect to several of the trial court's rulings. For the reasons that follow, we reverse the trial court's ruling that Knaack lacks standing to bring her claim for monetary damages but affirm the grant of summary judgment to the Association on that claim, as Knaack has not shown any harm resulting from the Association's actions. In addition, while we affirm the trial

court's ruling that Knaack lacks standing to bring her claim for a declaratory judgment as to the validity of the new leasing restrictions in this direct action against the Association, we vacate the grant of summary judgment to the Association on that claim and remand the case for the trial court to dismiss that claim without prejudice.

Viewed in the light most favorable to Knaack, the nonmovant, see *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 460 (868 SE2d 827) (2022), the record shows that she bought a single family home (the "Property") in the Henley Park subdivision in 2011, at which time she became a member of the Association. The Property is subject to a "Declaration of Covenants, Restrictions and Easements for Henley Park" issued in 1990 (the "Declaration"). As relevant to this appeal, Section 9.3 of the Declaration, which governs amendments thereto, states, in pertinent part:

> Amendments to this Declaration, [with exceptions not relevant here], shall be proposed and adopted in the following manner: (a) Notice of the subject matter of the proposed amendment shall be included in the notice of the meeting of the Association at which such proposed amendment is to be considered and shall be delivered to each Owner [of property in the subdivision]; [and] (b) at such meeting, a resolution adopting a proposed amendment may be proposed by either the [Association's board of directors] or by Owners. Such amendment must

2

be approved by a Two-Thirds Vote[, with other exceptions not relevant here].

Knaack listed the Property for sale in or around June 2018 and moved out of state the following month. In early August 2018, Knaack entered into an agreement (the "Agreement") to sell the Property for $393,000 to HP Georgia I, LLC — the Georgia office of Home Partners of America — a company that "provides alternative mechanisms for people to lease or lease to purchase homes." As part of the Agreement, HP Georgia I asked the Association to complete a questionnaire that sought information about the Association and its leasing rules. The Agreement also included a Buyer Addendum, which contained 18 paragraphs supplementing the Agreement, several of which authorized HP Georgia I to terminate the Agreement within a certain time frame or upon the occurrence or non-occurrence of various contingencies.

On August 13, 2018, the Association's board of directors enacted several new Community Rules governing the leasing of homes subject to the Declaration. In relevant part, the new rules provide:

6.1 Homeowners must own their homes for one full year (12 months) prior to being eligible to rent the home to third parties. Approval to rent

will be granted to homeowners by the HOA provided the rental quota limit, if any, for the subdivision has not been exceeded.

6.2 The required minimum rental period will be one year (12 months).

6.3 Each unmarried adult intending to rent a home at Henley Park shall submit a separate rental application to the [Henley Park] HOA.

6.4 Each adult intending to rent a home at Henley Park may be subject to background screening. The Association retains the right to withhold approval for rental/occupancy of any individual based on adverse background.

HP Georgia I terminated the Agreement on August 21, 2018. The written termination form indicates, without elaboration, that the termination was based on "the failure of the following contingency to which the Agreement is subject: Buyer Addendum." Another buyer bought the Property for $385,000 in April 2019.

In the interim, Knaack sued the Association in December 2018 for breach of the Declaration and of the covenant of good faith and fair dealing.[1] She alleged, inter alia, that the Association: (i) breached the Declaration by adopting the new Community Rules in violation of the Declaration's amendment requirements; and

---

[1] While Knaack initially asserted additional claims for tortious interference with contractual relations, punitive damages, and attorney fees, she later withdrew those claims.

4

(ii) breached the covenant of good faith and fair dealing by adopting the new Community Rules for the purpose of preventing Knaack from selling the Property to HP Georgia I. She sought monetary damages and a declaration that the new Community Rules are void.

Following discovery, the Association moved for summary judgment. As to Knaack's breach-of-Declaration claim, the Association contended that: (i) Knaack's proposed sale to a corporate entity was barred by the Declaration; (ii) the new Community Rules did not further restrict Knaack's use of the Property; (iii) the new rules were properly adopted pursuant to the Association's Articles of Incorporation; and (iv) regardless, Knaack cannot show that HP Georgia I terminated the Agreement because of the new Community Rules. The Association further contended that Knaack cannot establish a breach of the duty of good faith and fair dealing because the Association did not breach any contractual obligations to her and that her alleged damages are too speculative to be recoverable. During oral argument, the Association also argued that, to the extent that Knaack claimed that the new Community Rules constituted an unauthorized amendment to the Declaration, she lacked standing because such a claim must be brought as a derivative action on behalf of the

5

Association. See OCGA § 14-3-740; *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 585-586 (1) (397 SE2d 699) (1990).

In its order granting the Association's motion for summary judgment, the trial court first concluded that Knaack lacks standing to bring her claims because her challenges to the validity of the new Community Rules, which affect all Association members, must be brought in a derivative action. The court also ruled that, regardless: (i) Knaack cannot establish that HP Georgia I terminated the Agreement as a result of the adoption of the new Community Rules; (ii) the new rules did not restrict Knaack's rights to use the Property; (iii) the body of the Declaration prohibited the sale of the Property to HP Georgia I regardless of any limitations imposed by the new rules; (iv) Knaack cannot establish damages resulting from the new rules; and (v) absent a breach of the Declaration, Knaack also cannot establish a breach of the covenant of good faith and fair dealing. This appeal followed.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant." *Henry*, 362 Ga. App. at 460.

> Summary judgment is proper when there is no genuine issue of material
> fact and the movant is entitled to judgment as a matter of law. The

6

burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the movant meets this burden, the nonmovant cannot rest on [her] pleadings, but rather must point to specific evidence giving rise to a triable issue.

Id. at 460-461 (citations and punctuation omitted); see OCGA § 9-11-56 (c), (e). "In that vein, speculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." *Handberry v. Manning Forestry Svcs.*, 353 Ga. App. 150, 152 (836 SE2d 545) (2019) (citation and punctuation omitted).

1. Knaack first challenges the trial court's ruling that she lacks standing. She contends that (a) she has standing to bring this direct action because she suffered a special injury separate and distinct from other Association members, and (b) regardless, because standing implicates the trial court's subject matter jurisdiction, it may not be resolved in a motion for summary judgment. For the reasons that follow, while Knaack has standing to assert her claim for monetary damages, she lacks standing to seek a declaratory judgment, and the trial court should have dismissed that claim without prejudice.

7

The Association is organized as a nonprofit corporation under the Georgia Nonprofit Corporation Code. See OCGA § 14-3-101 et seq.; see also OCGA § 44-3-227 (a). Under that Code, members of a nonprofit corporation may, under certain circumstances, file derivative proceedings. See OCGA § 14-3-740 et seq.

> In a nonprofit derivative suit, a member asserts for the corporation's benefit rights or remedies belonging to the corporation, not to the member. The wrong which the action seeks to redress is one which the corporation, not the individual, has sustained. The member is a mere nominal party, having no right, title or interest in the claim itself. One of the primary underlying reasons for the derivative action — especially applicable to nonprofits — is to avoid a multiplicity of lawsuits.

*Dunn v. Ceccarelli*, 227 Ga. App. 505, 507 (1) (a) (489 SE2d 563) (1997) (citations omitted) (physical precedent only); accord *Ga. Appreciation Property v. Enclave at Riverwalk Townhome Assn.*, 345 Ga. App. 413, 419 (812 SE2d 157) (2018) (physical precedent only); see *Crittenton v. Southland Owners Assn.*, 312 Ga. App. 521, 524-525 (2) (718 SE2d 839) (2011) (explaining that "[a] derivative suit is brought on behalf of a corporation for harm done to it" and applying derivative suit analysis to a homeowners' association case) (citation and punctuation omitted).

"Members or directors of nonprofit corporations may also bring direct actions against the corporation, but only if the member suffered a special injury as a result of

8

the corporate wrong." *Ga. Appreciation Property*, 345 Ga. App. at 420 (citation and punctuation omitted); accord *Crittenton*, 312 Ga. App. at 524 (2); *Dunn*, 227 Ga. App. at 508 (1) (a). "[T]o have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation." *Phoenix Airline Svcs.*, 260 Ga. at 586 (1) (citation and punctuation omitted). To sustain a direct action, the plaintiff must allege "an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder which exists independently of any right of the corporation." *Grace Bros. v. Farley Indus.*, 264 Ga. 817, 819 (2) (450 SE2d 814) (1994); accord *Crittenton*, 312 Ga. App. at 524 (2). In other words, "[f]or a plaintiff to have standing to bring an individual action, [she] must be injured directly or independently of the corporation." *Phoenix Airline Svcs.*, 260 Ga. at 586 (1) (citation and punctuation omitted); accord *Crittenton*, 312 Ga. App. at 524 (2).

Whether a claim is derivative or direct is to be determined "by looking to what the pleader alleged." *Phoenix Airline Svcs.*, 260 Ga. at 585 (1). "It is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision." Id. While we review a trial court's determination as to standing for

9

clear error, any questions of law inherent in that decision are reviewed de novo. *Harden v. Banks County*, 294 Ga. App. 327, 328 (1) (670 SE2d 133) (2008).

(a) *Claim for monetary damages.* Knaack alleged in her complaint that, by enacting the new Community Rules, the Association improperly amended the Declaration without complying with the Section 9.3 provisions requiring notice to the Association's members and approval by two-thirds of such members. Knaack further alleged that she had suffered damages unique to her insofar as HP Georgia I terminated the Agreement as a result of the new Community Rules.[2] Notably, while the rental restrictions imposed by the new Community Rules apply equally to all members of the Association, the record contains no indication that any member other than Knaack had a pending contract to sell a home to a potential landlord at the time the new Community Rules were enacted or that any such contract was thereafter terminated. Consequently, on the current record, Knaack has sufficiently alleged a distinct injury with respect to her claim for monetary damages, and we reverse the

---

[2] In her opposition to the Association's motion for summary judgment, Knaack asserted that she had suffered nearly $40,000 in damages consisting of the difference between the price HP Georgia I had agreed to pay for the Property and the amount the ultimate buyer paid, as well as amounts she paid for repairs, utilities, maintenance, mortgage payments, HOA dues, and storage between the date on which the Agreement was terminated and the ultimate sale of the Property approximately eight months later.

trial court's ruling that Knaack lacks standing to assert that claim in this direct action. See *Grace Bros.*, 264 Ga. at 819 (2) (holding that a direct action could be maintained where the plaintiffs claimed that the defendants breached their fiduciary duty to minority shareholders by failing to seek consummation of a merger agreement, and thereby asserted "an injury separate and distinct from any injury to the corporation or the majority shareholders because only the minority shareholders stood to receive [a certain sum] per share upon consummation of the merger agreement"); cf. *Harden*, 294 Ga. App. at 329 (1) (concluding that, while water runoff from a construction project would impact all neighboring property owners, the plaintiffs had shown that they would suffer special damages not common to other property owners insofar as the water runoff would put the plaintiffs' plant nursery out of business). Our ruling that Knaack has standing to bring this direct action insofar as she seeks monetary damages moots her contention that the trial court improperly adjudicated her standing to bring such a claim in the context of a motion for summary judgment.

(b) *Claim for a declaratory ruling.* Knaack's standing to seek a declaratory judgment, however, is another matter. As stated above, the rental restrictions imposed by the new Community Rules apply equally to all members of the Association. Consequently, because the wrong sought to be addressed in a cause of action seeking

11

a declaratory ruling that the new rules are void is one sustained by the Association, any such claim must be brought in a derivative action. See *Ga. Appreciation Property*, 345 Ga. App. at 419; *Crittenton*, 312 Ga. App. at 524-525 (2); *Dunn*, 227 Ga. App. at 507 (1) (a). And while the trial court properly concluded that Knaack's claim for a ruling that the new rules are void should be dismissed, the court improperly did so (as Knaack correctly asserts) in the context of an order granting summary judgment. See *North Walhalla Properties v. Kennestone Gates Condo. Assn.*, 358 Ga. App. 272, 275 (1) (855 SE2d 35) (2021) (vacating the trial court's order granting summary judgment to the defendants due to the plaintiff's lack of standing and remanding the case for the trial court to enter a dismissal); *Ga. Appreciation Property*, 345 Ga. App. at 423-424 (c) ("When a trial court is without jurisdiction over a declaratory judgment claim because of a lack of justiciability, the proper disposition is for the trial court to dismiss the claim without prejudice.") (citation and punctuation omitted). Consequently, we must vacate that portion of the trial court's order that disposed of Knaack's claim for a declaratory ruling that the new rules are void and remand this case for entry of an order dismissing that claim without prejudice. See *North Walhalla Properties*, 358 Ga. App. at 275 (1); *Ga. Appreciation Property*, 345 Ga. App. at 423-424 (c); see also generally *Abushmais*

12

*v. Erby*, 282 Ga. 619, 622 (3) (652 SE2d 549) (2007) ("The court's lack of subject-matter jurisdiction cannot be waived and may be raised at any time either in the trial court, in a collateral attack on a judgment, or in an appeal.") (citation and punctuation omitted); *Sherman v. Dev. Auth. of Fulton County*, 324 Ga. App. 23, 23 (749 SE2d 29) (2013) ("[A] plaintiff with standing is a prerequisite for the existence of subject matter jurisdiction.") (citation and punctuation omitted).

2. Knaack also challenges the trial court's ruling that she cannot establish causation, i.e., that she cannot show that HP Georgia I terminated the Agreement as a result of the adoption of the new Community Rules. She contends that disputed issues of material fact remain that would authorize a jury finding in her favor on this issue. We disagree, and, as a result, Knaack's breach-of-contract claim fails.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. Proof of damages is an essential element to a claim for breach of contract, and a failure to prove damages is fatal to a plaintiff's claim." *McAlister v. Clifton*, 313 Ga. 737, 742 (2) (873 SE2d 178) (2022) (citations and punctuation omitted). To prove resultant damages "growing out of a breach of contract," they "must be such as can be traced solely to the breach." *Leader Nat. Ins. Co. v. Smith*,

13

177 Ga. App. 267, 279 (2) (339 SE2d 321) (1985); see OCGA § 13-6-1 ("Damages are given as compensation for the injury sustained as a result of the breach of a contract."). Here, Knaack cannot establish that she suffered any harm as a result of the enactment of the new Community Rules because there is insufficient record evidence for a factfinder to conclude that HP Georgia I terminated the Agreement because of the new rules.[3]

Knaack first argues that the minutes of the August 13, 2018 Association board meeting at which the new Community Rules were adopted show that the proposed sale of the Property to HP Georgia I was the focus of the meeting and the primary target of the new rules. The board's intent in enacting the new rules, however, sheds no light on why HP Georgia I terminated the Agreement, and the meeting minutes thus have no probative value in that regard.

---

[3] Generally speaking, a plaintiff need not always establish the actual amount of damages flowing from the breach to survive summary judgment on a breach-of-contract claim. See *Eastview Healthcare v. Synertx, Inc.*, 296 Ga. App. 393, 398-399 (4) (674 SE2d 641) (2009); see also OCGA § 13-6-6. That proposition is inapplicable to the peculiar factual and procedural posture presented here, however, because allowing Knaack's breach-of-Declaration claim to proceed absent evidence of an injury specific to her resulting from the Association's alleged wrongdoing would eviscerate the standing requirement in challenges to HOA restrictions. See *Grace Bros.*, 264 Ga. at 819 (2); *Phoenix Airline Svcs.*, 260 Ga. at 586 (1); *Ga. Appreciation Property*, 345 Ga. App. at 420; *Crittenton*, 312 Ga. App. at 524 (2); *Dunn*, 227 Ga. App. at 508 (1) (a); see also Division 1, above.

14

Knaack also highlights an August 16, 2018 e-mail exchange between her real estate agent and HP Georgia I's real estate agent regarding the newly enacted Community Rules. In the exchange, HP Georgia I's agent asks, "Did they add these restrictions just because Home Partners asked a bunch of questions about the HOA?" and adds, "Unless they can make some changes to these rules, this is going to ruin this deal." Knaack's agent responds, "Yes, magical made up document. We fully understand it will kill the deal. Give us until Monday at least please." HP Georgia I's agent then replies:

> I would love to, but I have no idea what Home Partners is going to say tomorrow, since they were sent this document too. Time is definitely of the essence because the approved renter is expecting to be able to move into this home shortly after closing... if I inform him that this deal may fall through, he'll immediately begin to pursue a different home with Home Partners. I don't want this deal to fall through.. hoping they can change these rules asap.

(Capitalization and punctuation in original.)

Pretermitting whether some or all of this e-mail exchange would be inadmissible as hearsay, see OCGA § 24-8-801 et seq., it establishes, at most, that HP Georgia I's *real estate agent* believed that the new rules were an impediment to closing the sale of Knaack's home. Thus, the exchange at best constitutes speculative

15

circumstantial evidence of why HP Georgia I may have terminated the Agreement. But "before a plaintiff in a civil case can have a verdict in [her] favor supported solely by circumstantial evidence, such evidence must be such as to reasonably establish the theory relied upon, and to preponderate to that theory rather than to any other reasonable hypothesis." *Handberry*, 353 Ga. App. at 156 (1) (citation, punctuation, and emphasis omitted). In other words, circumstantial evidence may be sufficient for a plaintiff's claim to survive summary judgment only "if other theories are shown to be less probable, even if those other theories are not conclusively excluded." Id. at 157 (1) (citation, punctuation, and emphasis omitted).

As stated above, the Agreement's Buyer Addendum included multiple provisions authorizing HP Georgia I to terminate the Agreement for various reasons, or for no reason at all. For example, HP Georgia I was authorized to terminate the Agreement: (i) within three days after receiving certain information about the HOA to which the Property was subject; (ii) if "rental or leasing of the Property without the need for application or approval [was] prohibited or limited"; and (iii) at any time before the expiration of the twelve-day due diligence period, which had not yet expired when HP Georgia I terminated the Agreement on August 21, 2018. Given HP Georgia I's authority to terminate the Agreement for any reason on the date it did so

16

— and absent any record evidence establishing the basis for its real estate agent's subjective belief that the new Community Rules were likely to cause a termination of the Agreement — the limited probative value of the above e-mail exchange, at best, would permit a jury only to speculate as to whether the new rules were the primary cause of HP Georgia I's decision. See *Handberry*, 353 Ga. App. at 152 (speculation raising only conjecture or possibility is insufficient to create an inference of fact on summary judgment); accord *Cochran v. Kendrick*, 297 Ga. 655, 660-661 (2) (778 SE2d 1) (2015) (speculation about motive behind defendant's actions insufficient to defeat summary judgment).

Moreover, Knaack's reliance on the temporal proximity between the adoption of the new rules and the termination of the Agreement likewise is insufficient to defeat summary judgment. As with the e-mail exchange discussed above, the time frame of the relevant events, again, at best constitutes circumstantial evidence that HP Georgia I terminated the Agreement because of the new rules. But given HP Georgia I's authority to terminate for any reason before the expiration of the due diligence period, any such circumstantial evidence is insufficient to render other reasons for the termination less probable, and thus would permit a jury only to speculate as to the reason or reasons behind HP Georgia I's decision. See *Cochran*, 297 Ga. at 660-661

17

(2); *Handberry*, 353 Ga. App. at 152. For each of the above reasons, Knaack has not met her appellate burden of identifying record evidence from which a reasonable factfinder could conclude that HP Georgia I terminated the Agreement as a result of the new Community Rules — which, on the facts of this case, Knaack must establish to show that she suffered damages as a result of the adoption of the new rules. See generally OCGA § 13-6-1; *McAlister*, 313 Ga. at 742 (2); *Leader Nat. Ins. Co.*, 177 Ga. App. at 279 (2). Consequently, we affirm the grant of summary judgment to the Association on Knaack's claim for breach of the Declaration.

3. Knaack also challenges the grant of summary judgment to the Association on her claim for a breach of the covenant of good faith and fair dealing. We again discern no error.

> [E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. . . . [T]his implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. And, where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.

*Hunting Aircraft v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 451-452 (1) (636 SE2d 139) (2006) (citations, punctuation, and emphasis omitted).

18

While research has revealed no Georgia appellate decisions addressing this issue, the jurisdictions that have addressed it agree that damage resulting from the breach is an essential element of a claim for a breach of the covenant of good faith and fair dealing. See *Miller v. FiberLight*, 343 Ga. App. 593, 607 (4) (808 SE2d 75) (2017) ("'[T]o state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages.'") (applying Delaware law) (quoting *CMS Investment Holdings v. Castle*, No. 9468-VCP, 2015 Del. Ch. LEXIS 169, *56 (IV) (C) (June 23, 2015)); *Cox v. Mtg. Electronic Registration Systems*, 685 F3d 663, 671-672 (II) (C) (8th Cir. 2012) (under Minnesota law, a claim for breach of the duty of good faith and fair dealing requires "a causal link between the alleged breach and the party's claimed damages") (citation and punctuation omitted); *Codding v. Pearson Ed.*, 842 Fed. Appx. 70, 72 (2) (9th Cir. 2021) (under California law, "[c]ausation between breach and damage is an essential element of a claim for breach of contract and breach of the implied covenant of good faith and fair dealing"); *Associated Indem. Corp. v. Small*, No. 06-00187-CV-W-REL, 2007 U.S. Dist. LEXIS 19158, *25-26 (III) (G)-(H) (W.D. Mo. Mar. 19, 2007) (under Missouri law, damage resulting from the breach is an element of a claim for breach of the implied covenant

of good faith and fair dealing); *Bowes Constr. v. South Dakota Dept. of Transp.*, 2010 SD 99, 793 NW2d 36, 44 (S.D. 2010) (proof of causation of damages is a required element of a claim for a breach of the duty of good faith and fair dealing). As discussed above in Division 2, the record evidence is insufficient for a jury to find that HP Georgia I terminated the Agreement because of any acts of the Association. Consequently, pretermitting whether a claim for breach of the covenant of good faith and fair dealing otherwise potentially could lie on the facts of this case, Knaack cannot establish damages resulting from any such breach. The trial court therefore did not err when it granted summary judgment to the Association on Knaack's claim for breach of the covenant of good faith and fair dealing, and we affirm the court's judgment on that issue.

4. Given our rulings in Divisions 1-3, it is unnecessary to address Knaack's contentions that the trial court erred when it concluded that: (i) the rental restrictions in the new Community Rules do not constitute restrictive covenants; (ii) the Declaration itself bars HP Georgia I from owning the Property; and (iii) the amount of damages sought by Knaack is too speculative to permit recovery (which necessarily was disposed of by our ruling in Division 2 that Knaack cannot establish

20

that she suffered *any* damages resulting from the adoption of the new Community Rules).

In sum, we (i) reverse the trial court's ruling that Knaack lacks standing to bring her claim for monetary damages, (ii) affirm the grant of summary judgment to the Association on that claim, (iii) affirm the trial court's ruling that Knaack lacks standing to bring her claim for a declaratory judgment, (iv) vacate the grant of summary judgment to the Association on that claim, and (v) remand the case for the trial court to dismiss that claim without prejudice.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Doyle, P. J., and Reese, J., concur.*